## HOLSTON MANUFACTURING COMPANY v. COTTON STATES HOSIERY MILLS.

Eastern Section. June 27, 1931.

Petition for Certiorari denied by Supreme Court, October 10, 1931.

Allison, Lynch, Phillips & Lynch, of Chattanooga, for appellant.

Webb, Baker & Egerton, of Knoxville, and Strang & Fletcher, of Chattanooga, for appellee.

PORTRUM, J. On a previous appeal, this Court held the present appellant, O. B. Andrews, liable for $20,000 and interest on a subscription for stock in the Cotton States Hosiery Mills. These were the principal facts:

O. B. Andrews' brother, C. S. Andrews, had a hosiery buying business conducted under the name of Cotton States Hosiery Mills. C. S. Andrews made a gift of one-fifth interest in this business to O. B. Andrews, largely out of gratitude for certain favors O. B. Andrews had done him. The business then became a partnership, owned four-fifths by C. S. Andrews and one-fifth by O. B. Andrews. To escape the liability of the partnership the partners, in 1920, decided to incorporate the business. C. S. Andrews handled the incorporation; he decided that the business was worth in excess of $100,000 and that it should be incorporated for that amount. His decision was accepted in good faith by O. B. Andrews. An attorney was engaged and the matter laid before him. He advised them that the assets of the partnership could not be received in payment of the capital stock of the new corporation, for it was necessary that the capital stock be paid in cash, or another asset not available to the partnership. It was then decided for the partners to borrow $100,000, upon a two-day loan, and pay in the subscription for the capital stock, then in proportion of $80,000 and $20,000 which represented the subscription of each partner. This money was paid in for the capital stock and immediately paid out to the partners in purchase of their interest in the partnership. The partners then returned the money to the bank in discharge of the note. A few years later, on account of the corporation's unfortunate contracts, it became insolvent; and the creditors attacked this arrangement in the purchase and payment of the capital stock as unlawful. The creditors sought to hold the stockholders liable upon their original subscriptions for the capital stock. The stockholders defended upon the ground that they had made a contract with the corporation for the sale of the assets of the partnership for the purchase price of $100,000; that this contract was made in good faith and the assets of the partnership which were transferred were worth the recited consideration. On the former appeal this Court held that the cash payment for the capital stock was only a colorable transaction, and that in fact the assets of the corporation was paid in for the capital stock of the two principal stockholders. But the charter provided that nothing but cash should be taken in payment for the capital stock, or other assets not available to the partnership, and that the stockholders were liable for their subscription to the capital

stock. A judgment for the par value of the capital stock was entered. The Court necessarily adjudicated that the sale of the partnership's assets was a void sale, and the contract of sale was a nullity. However, the corporation had received the assets of the partnership under the void contract, and it was accountable to the partnership for the value of the assets. Its accountability went only to the actual value of the assets and not the value as fixed in the contract of sale.

This case was remanded to the lower court, when O. B. Andrews filed a petition in the cause, setting out the fact that he was the owner of one-fifth of the partnership assets which had been transferred to the corporation under the contract of sale, and asking to be allowed to prove his claim as a general creditor against the corporation, and to prove the partnership's contract of sale of the assets to the corporation. He sought to have the contract's rights established as a claim and then to participate in the distribution of the corporation's funds.

The chancellor recognized Mr. Andrews' right to prove and establish the true, or actual, value of the corporation's assets, and his right to participate in the distribution of the corporate funds to the amount of his interest in the assets of the partnership; but the chancellor declined to recognize the contract of sale, and the value of the assets as therein contracted; he upon his own motion ordered a reference to the master to determine the true value of the assets of the partnership. The master reported the value to be less than $6,000; the appellant filed exceptions to the report which were overruled and the master's report confirmed. The appellant then prosecuted an appeal to this Court.

Upon this appeal we are concerned with but one question; the appellant has narrowed this issue himself. We quote:

"Their first argument is that there are concurrent findings of fact by the master and the chancellor as to the actual value of the property. We do not deny this. We think that both the chancellor and the master erred in neglecting to find the value of a large number of the items of property which appellant transferred to the corporation. But that question is now immaterial. The only question on the appeal is one of law, whether a creditor can prove his claim for the contract price, since that is the only question, and any discussion of actual values is beside the point."

The assignment makes the same question in a different form; we adopt the third assignment as the one most lucid. It reads:

"The chancellor erred in failing to hold that, by virtue of the bona fide contract between the appellant and the Cotton States Hosiery Mills, wherein the value of said property transferred was fixed at $20,000, the amount of appellant's just and legal claim as

a creditor of Cotton States Hosiery Mills is conclusively fixed at $20,000 with accrued interest.''

It is insisted that since this contract was made in good faith—a fact conclusive—that it is binding between the corporation and the partnership; and that a subsequent contracting creditor is in no position to question the contract. It may be true that a subsequent creditor is not concerned with prior contracts made in good faith, and between creditors this issue is not open for an adjudication. The trouble with the appellant's position is, however, that he is relying upon a contract that has been adjudged a nullity. Therefore, it is not necessary for a subsequent creditor to attack it; the partnership is here trying to work out its rights to secure what it can in the absence of a contract. It is asserting a contract that has been declared void by the Court. It can claim nothing under it. Its only remedy is to set up the actual value of the assets turned over to the corporation, and then prove its claim for this value. There is no forfeiture for the Court to decree it be paid its pro rata for the actual value of the assets transferred. It has not been denied the liberty of contract for it executed an illegal contract. We cannot say in one breath the contract was invalid and in the next it is valid. We find no error in the conclusion of the chancellor and his decree is affirmed.

Snodgrass and Thompson, JJ., concur.